**Johnny Ray TREJO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–88–093–CR.**

Court of Appeals of Texas, Austin.

Feb. 22, 1989.

James H. Kreimeyer, Kreimeyer & Cain, Belton, for appellant.

Patrick J. Ridley, County Atty., Mark D. Kimball, Asst. County Atty., Belton, for the State.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

Over a plea of not guilty, the trial court, sitting without a jury, found Johnny Ray Trejo guilty of a Class B misdemeanor in possessing a useable quantity of marijua-

na, of not more than two ounces. The court assessed punishment at six months in jail, and a $1,000 fine. Tex.Rev.Civ.Stat. Ann. art. 4476–15, § 4.051(a), (b)(1) (Supp. 1988). Trejo contends in a single point of error that the evidence was insufficient to permit the finding of guilty. We will affirm the judgment.

## THE EVIDENCE

Police officers Jarveis and Rose gave uncontradicted testimony. Jarveis testified he saw a four-door automobile stopped in a city park, at 12:20 a.m., in apparent violation of the curfew notices displayed on signs erected in the park, one of which stood in front of the automobile. The weather was cold and rainy. The windows of the automobile were down, and it appeared to be occupied. Jarveis radioed for a "back-up unit" as he drove his own car to the parked automobile.

Jarveis queried a female seated in the driver's seat of the parked automobile. She stated she did not know of the curfew, and that she had left her driver's license at home. She produced a pawn ticket for identification, then got out of the automobile.

Jarveis leaned over by the open back window of the automobile. He smelled "a strong odor" of freshly burnt marijuana emanating from the car. He also saw two male passengers. Trejo occupied the right-front seat, the other passenger the rear seat. They obeyed Jarveis's order to get out of the car. Officer Rose arrived as Jarveis stood with the occupants of the car.

Jarveis invited Rose to "smell inside the vehicle," which he did. Rose testified he smelled the odor of marijuana, which had been burned within the hour, in his opinion. Rose searched the car. He found a small "derringer" pistol under the rear seat. On the passenger side of the front seat, where Trejo had been sitting, Rose saw "some Zig-Zag papers, or rolling papers," as well as "some seeds." Rose then watched the three individuals while Jarveis conducted a second search.

On the passenger side of the front seat, under a floormat, Jarveis found two par-tially burned marijuana cigarettes. Rose failed to find them because he looked only under "the lower portion" of the floormat. On the passenger side of the front seat, where Trejo had been sitting, Jarveis found "some seeds," and "a package of rolling papers," or "Zig-Zags." None of the three individuals claimed the marijuana cigarettes when Jarveis asked who owned them. Jarveis arrested all three.

Before trial, and based on an analysis of the two cigarettes by the Department of Public Safety, Trejo and the State stipulated the two cigarettes constituted a useable quantity of marijuana, weighing not more than two ounces. The "seeds" were not mentioned in the report or the stipulation, and nothing in the evidence explicitly identified the seeds as being marijuana seeds. Nothing in the evidence suggested that the "rolling papers" were the same as those which encased the two marijuana cigarettes.

## DISCUSSION AND HOLDINGS

The trial court's finding of guilty rests entirely on circumstantial evidence. We therefore inquire whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt; and whether the evidence as a whole permitted the fact finder reasonably to conclude that every reasonable hypothesis, other than Trejo's guilt, had been excluded. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Cr.App.1988); *Moore v. State,* 532 S.W.2d 333, 337 (Tex.Cr.App.1976).

■ The essential elements of the offense are (1) Trejo had actual care, custody, control, or management of the two cigarettes, and (2) he knew they were contraband. The "possession" need not be exclusive. It may be joint among the occupants of the car, and that is the State's theory in Trejo's case. Trejo's presence in the car, with the two cigarettes, is a factor that logically tends to show his participation in the offense; standing alone, however, it is insufficient to support a finding of guilty. Additional evidence is required, which "affirmatively links" Trejo to the two ciga-

rettes, before the finding of guilty may be sustained under the rules mentioned in the preceding paragraph. *Martin,* 753 S.W.2d at 387; *Gutierrez v. State,* 628 S.W.2d 57, 67 (Tex.Cr.App.1980) (Opinion on Appellant's Motion for Rehearing).

The application of the relevant rules to particular circumstances has given rise to more than a few opinions by the Court of Criminal Appeals. *See generally* Caudill, *Probability Theory and Constructive Possession of Narcotics: On Finding that Winning Combination,* 17 Hous.L.Rev. 541 (1980). Because the theory is one of constructive, and not literal, possession, and a deprivation of liberty is at stake, the matter is a delicate one. Critical distinctions are, nevertheless, not always apparent. *Cf., e.g., McGaskey v. State,* 451 S.W. 2d 486 (Tex.Cr.App.1970) (evidence held *sufficient* when it showed only that appellant was arrested while sitting alone in a parked car, "under the steering wheel," and marijuana was found in a tobacco can in the glove compartment, the record being silent as to who owned the car and who had operated it last), and *Presswood v. State,* 548 S.W.2d 398 (Tex.Cr.App.1977) (evidence held *insufficient* when it showed only that appellant drove a car, in which his brother was a passenger, and marijuana was found in the glove compartment, the record being silent as to who owned the car and whether others might have used it).

■ We find the Court of Criminal Appeals has identified several factors, recurring in similar cases, that have logical force in establishing the two essential elements, and excluding exculpatory hypotheses, when narcotics are found in an automobile. That the accused *knew of the presence* of the contraband and its *forbidden nature* may be inferred from such particular factors as these: (1) the contraband was so situated in the car that it could be seen by the accused, *Salas v. State,* 451 S.W.2d 504 (Tex.Cr.App.1970); *Sanchez v. State,* 589 S.W.2d 422 (Tex.Cr.App.1979); *DeShong v. State,* 625 S.W.2d 327 (Tex.Cr.App.1981); (2) there existed an odor of raw or recently burned marijuana, *Duff v. State,* 546 S.W.2d 283 (Tex.Cr.App.1977); *Moulden v.*

*State,* 576 S.W.2d 817 (Tex.Cr.App.1978); *Christopher v. State,* 639 S.W.2d 932 (Tex. Cr.App.1982); *Lewis v. State,* 664 S.W.2d 345 (Tex.Cr.App.1984); *Marsh v. State,* 684 S.W.2d 676 (Tex.Cr.App.1984); (3) articles related to the contraband, such as apparent marijuana seeds, a "sprig" of marijuana, or paraphernalia to use the contraband, were situated in the car so as to be within the view of the accused, *Sanders v. State,* 482 S.W.2d 648 (Tex.Cr.App.1972), *Sanchez, Lewis;* (4) the occupants of the automobile gave conflicting statements about relevant matters, *Duff;* (5) there was conduct by the accused indicating "a consciousness of guilt," *Gutierrez, supra,* 628 S.W.2d at 60.

■ The element of *actual care, control,* or *management* may be inferred from such particular factors as these: (1) the accused owned the automobile in which the narcotics were found, *DeShong;* (2) he operated the automobile, *DeShong, Christopher, Gutierrez, Marsh;* (3) the contraband was so situated in the automobile that it was readily accessible to the accused, *Salas, Moulden, Sanchez, DeShong, Lewis;* (4) the accused was in close proximity to articles related to the contraband, such as apparent marijuana seeds, a "sprig" of marijuana, or "rolling papers" or other paraphernalia connected to the use of the contraband, *Sanders v. State,* 482 S.W.2d 648 (Tex.Cr.App.1972), *Duff, Moulden, Sanchez, Lewis;* and (5) the accused had some special connection to the contraband, as in *Moulden* where the marijuana was found in the accused's overnight bag, and in *Christopher* where he had a key to the locked camper, on a pickup truck, where the contraband was found.

■ Still other factors have logical force in establishing both of the essential elements, and in eliminating exculpatory hypotheses: (1) the physical condition of the accused indicated his recent consumption of the narcotic found in the car, *McGaskey;* (2) traces of the contraband were found on the person of the accused, *Salas;* (3) the accused made affirmative statements connecting him to the contraband, *Sanders, Moulden;* and (4) the automobile appeared to be involved, a "short time" before it was

stopped, in activities that appeared to be drug trafficking, *Marsh.*

Because the two essential but disparate elements must be established, and any exculpatory hypothesis excluded, it is seldom that any *one* of the listed factors will have logical force sufficient to sustain a conviction based on constructive possession of the narcotic, even when coupled with the accused's presence in the automobile where it was found. The "affirmative link" customarily emerges, instead, from an orchestration of several of the listed factors, and the logical force they have in combination.

█ In Trejo's case, the evidence showed the following factors: (1) the automobile emitted an aroma of recently or freshly burnt marijuana, of a strength that indicated the marijuana had been burned, in the car, within the hour; (2) the two cigarettes were "partially burned"; (3) seeds and rolling papers lay on the front seat where Trejo had been sitting in the front passenger seat; (4) the marijuana, while concealed under the floormat, was easily accessible to Trejo, and more accessible to him than the other occupants; (5) the automobile was parked off the street, in the dark, in the early morning hours, with the windows down in cold and rainy weather; (6) the apparent driver denied knowledge of the curfew, a notice of which was on a sign located in front of the car. From the two factors last mentioned, the trier of fact might reason the automobile was parked where it was to prevent observation of any activities in the car; and the windows were down in inclement weather to permit the escape of smoke and odor from the two cigarettes, while they were burning.

We believe a rational trier of fact might infer the requisite element of *actual care, custody, control or management*, beyond a reasonable doubt, from the aggregate logical force of all the six factors listed in the preceding paragraph. The odor of freshly burnt marijuana, coupled with the presence of the seeds and rolling papers on the front seat, must have apprised Trejo of the existence of marijuana in the car, even though none was in "plain view." *Christopher*, 639 S.W.2d at 935–36. The effects of

this are two. First, it permitted the trial court reasonably to conclude that the evidence excluded the hypothesis that Trejo was unaware of the presence of the marijuana in the car; second, it established the prerequisite necessary to Trejo's care, custody, control, or management of the marijuana—his awareness that it existed in the car. Trejo could not have possessed the marijuana, jointly or otherwise, unless he first knew of its existence. When these factors are combined with the clandestine situation of the parked car, and the location of the cigarettes, where they were easily accessible to Trejo, being more accessible to him than any other occupant, we believe the evidence is sufficient to permit the inference of Trejo's joint care, custody, control or management, beyond a reasonable doubt, to the exclusion of any reasonable exculpatory hypothesis. We refer for authority to *Duff*, as an example. In *Duff*, the evidence was held sufficient to link the front-seat passenger (Pendley) to the marijuana, a part of which was in a box in the back seat, and another part in the trunk. The evidence showed that one officer smelled a strong odor of marijuana emanating from the car; that the driver stated to the officer that the passenger had ridden in the car from Corpus Christi to Austin, while the passenger declared to the officer that he was a hitchhiker who had gotten in the car only five minutes before; that the officer saw marijuana seeds scattered on the front floorboard; and, that the officer who actually searched the car stated he found no marijuana seeds there. The court concluded that the "affirmative link" was sufficiently established merely by the conflicting accounts given by the two occupants of the car, coupled with the marijuana odor and the presence of what *appeared* to be marijuana seeds. *Duff*, 546 S.W.2d at 288.

█ We believe a rational trier of fact might also infer the element of guilty *knowledge*, beyond a reasonable doubt, from the six factors present in Trejo's case. The element derives from the statute under which Trejo was charged. It provides that one "commits an offense if he *knowingly*

... possesses a useable quantity of marijuana." Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.051(a), *supra* (emphasis added). The statutory definition of "knowingly," given in the penal code, applies. Tex.Pen. Code Ann. §§ 1.03(b), 6.02(b) (1974). Proof of the element generally depends on circumstantial evidence; it is an inference drawn by the trier of fact from *all* the circumstances. *Dillon v. State,* 574 S.W. 2d 92, 94–95 (Tex.Cr.App.1978). Consequently, it does *not* imply an inquiry as to whether the evidence specifically showed that Trejo subjectively knew the characteristic odor of marijuana. Rather, it implies an inquiry directed at whether all the circumstances permit an inference, beyond a reasonable doubt, that Trejo was aware of the *forbidden nature* of his conduct (an inquiry different from whether he knew the cigarettes were under the floormat, which pertains to the element of actual care, custody, control, or management). *Humason v. State,* 728 S.W.2d 363, 367–68 (Tex.Cr.App.1987) (Clinton, J., concurring).

We believe the requisite inference might be drawn here from the presence of the marijuana odor; the location of the seeds, the rolling papers, and the partially burned cigarettes; Trejo's proximity to each of those articles; and, especially, the clandestine situation of the parked car, indicating a consciousness of guilt on the part of all the occupants of the car. In *Moulden,* for example, the court stated that Moulden's guilty knowledge was sufficiently proved *merely* by his close proximity to the marijuana at his feet, and to the related paraphernalia. *Moulden,* 576 S.W.2d at 820. In *Christopher,* for another example, the court noted that the odor of raw marijuana, emanating from the camper on the pickup driven by Christopher, indicated his probable awareness of the contraband before he entered the cab of the pickup; and, when coupled with his having a key to the camper, the "affirmative link" was sufficiently established both as to knowledge and actual care, custody, control or management. *Christopher,* 639 S.W.2d at 935–36. And in *Marsh* the evidence was held sufficient to establish both essential elements, and permit the exclusion of any exculpatory

hypotheses, when the only apparent link between the driver and the contraband in a pickup camper was his operation of the truck, coupled with the fact that it was seen coming from an airport a "short time" after witnesses had seen suspected drug activity there. *Marsh,* 684 S.W.2d at 680. We cannot distinguish, in any meaningful way, the evidence in these cases, and in *Duff,* from the evidence adduced in Trejo's case.

On the other hand, we believe Trejo's case *is* distinctly different from similar cases where the evidence was found insufficient. In *Payne v. State,* 480 S.W.2d 732 (Tex.Cr.App.1972), the contraband was located in a matchbox on the left side of the dashboard while the accused passenger sat on the right side of the car, diminishing the probability of his having knowledge of what the box contained, and the likelihood of his having ready access to its contents. To the same effect, *see Harvey v. State,* 487 S.W.2d 75 (Tex.Cr.App.1972), where the contraband was in a box in front of the driver's seat and the accused sat in the rear seat. In *Wiersing v. State,* 571 S.W.2d 188 (Tex.Cr.App.1978), the officer detected a "faint odor of marijuana," but he stated the odor was from "a previous occasion, either a day or a week earlier," thereby destroying the logical force of that factor, insofar as it might indicate a passenger's awareness of marijuana in the car. Moreover, the contraband was not shown to be in the "plain view" of the passenger, because only an inch of the plastic bag protruded from under the rear seat where he sat. Thus, it was not reasonable to suppose from this evidence alone that the passenger even knew of the contraband. In *Reyes v. State,* 575 S.W.2d 38 (Tex.Cr.App. 1979), the odor emanated from the trunk of the car in which the accused rode as a passenger, and nothing else linked him to the contraband. To the same effect, *see Travis v. State,* 638 S.W.2d 502 (Tex.Cr. App.1982); *Heltcel v. State,* 583 S.W.2d 791 (Tex.Cr.App.1979). In *Olguin v. State,* 601 S.W.2d 941 (Tex.Cr.App.1980), the marijuana was found under the passenger's seat, forbidding an inference that the accused

driver had ready access to it, even though he probably knew of its presence due to the strong odor of burnt marijuana coming from the car. In *Johnson v. State*, 625 S.W.2d 330 (Tex.Cr.App.1981), the link was not established when the marijuana was "hidden" in the car, ownership or exclusive use of the car was not shown, and the accused simply drove the car. To the same effect, *see Bush v. State*, 631 S.W.2d 760 (Tex.Cr.App.1982), and *Humason, supra*, 728 S.W.2d at 366–367.

We hold the evidence sufficient to support the judgment below, which we therefore affirm.