TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00453-CV






In the Matter of K. A. C.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-14,971, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 The State filed a petition alleging that K.A.C., a juvenile, engaged in delinquent
conduct by possessing crack cocaine in an amount of less than one gram by aggregate weight,
including any adulterants and dilutants. See Tex. Health & Safety Code Ann. § 481.115(a), (b)
(West Supp. 1999). The district court, sitting as a juvenile court, adjudicated appellant to have
engaged in the delinquent conduct charged and committed her to the Texas Youth Commission. 
In two issues, appellant contends that the evidence is legally and factually insufficient to support
the court's ruling. We will affirm the court's judgment.


Background


 The only witnesses to testify at the adjudication hearing were Austin Police Officers
Robert Soto and Robert Simmons. On June 5, 1998, Soto responded to a call from the Budget Inn
located in the 9100 block of North I-35. The on-site security guard requested police assistance
after he went to a particular guest room and asked the man answering the door, Grant Moore, to
leave the property because he had been notified previously that he was banned from the property. 
The security guard believed that Moore was selling drugs from the guest room. 

 Soto, Simmons, a police trainee, and the security guard went to the guest room. 
Moore opened the door and stepped outside the room to talk with the group, leaving the guest
room door open. The officers testified that Moore has a reputation with the police and hotels in
Austin as a suspected drug dealer. Many of the hotels have criminal trespass warnings posted
banning him from their properties. Soto testified that the police are often called to have Moore
removed from hotel properties. When Moore opened the door, Simmons watched the activity in
the guest room while Soto talked with Moore. Simmons saw a man and a woman lying on the bed
and saw appellant run from the room. 

 Moore told the officers that he was there to pick up his girlfriend, appellant, but
that he did not know her last name. Moore also did not know who had registered for the room. 
Soto thought all of this suspicious. He asked the man and woman lying on the bed who had
registered for the room. The woman, Jennifer Jesfer, answered that she had registered for the
room. When Soto asked Jesfer to identify the other three people in the room, she responded that
she did not know who they were; when she awoke they were all in her room. Soto thought her
response also was suspicious and asked her if there was anything illegal in the room. She
responded there was not and that the officers were welcome to look around. 

 During this conversation, Simmons continued to observe the bathroom. When the
officers first arrived, appellant ran into the bathroom, leaving the door open. Simmons and Soto
both testified that while appellant was in the bathroom they heard no sounds from the bathroom,
including no running water in the sink or shower and no toilet flushing. After only a few minutes,
appellant came out of the bathroom. She was not carrying a towel and her hands were not wet. 
Appellant identified herself and, as the officers later determined, gave a false birthdate which
indicated that she was an adult. Immediately after appellant came out of the bathroom, Simmons
went in to look around while Soto watched the four people in the guest room. 

 No one went into the bathroom between the time appellant left it and Simmons
entered. Simmons noticed the toilet water was clean and that there were two unraveled cigarette
butts in the toilet that looked as if they had been there for awhile. The bathroom sink was wet.
The shower area was also wet as if someone had recently taken a shower. In the soap dish located
inside the shower area Simmons noticed several rocks that appeared to him to be crack cocaine.
The rocks were completely dry. Simmons called Soto into the bathroom to look at the dry
substance. Soto secured the rocks and ran warrant checks on all four people in the room. (1) The
man lying on the bed was arrested due to several outstanding warrants and appellant was detained
for possession of cocaine. 


Discussion


 Appellant contends that the record evidence was legally and factually insufficient
to prove she had engaged in the delinquent conduct alleged. She argues that the evidence did not
establish that she exercised care, custody and control over the crack cocaine because there was no
affirmative link between her and the cocaine.

 In determining the legal sufficiency of the evidence, the question is whether, after
viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State,
614 S.W.2d 155 (Tex. Crim. App. 1981); In re E.P., 963 S.W.2d 191, 193 (Tex. App.--Austin
1998, no pet.). In determining the factual sufficiency of the evidence, an appellate court
determines whether the verdict is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). 
In a factual sufficiency review, we consider all of the evidence equally, including the testimony
of any defense witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d
319, 321 (Tex. App.--Austin 1992, no pet.). The standard of review is the same in direct and
circumstantial evidence cases. Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). 
The trier of fact, in this case the trial court, is the exclusive judge of the witnesses's credibility
and the weight to be given their testimony and is free to accept or reject any or all of the
testimony. Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The fact finder may
draw reasonable inferences and make reasonable deductions from the evidence. Benavides v.
State, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd). 

 In order to adjudicate appellant for unlawful possession of crack cocaine, the State
must prove appellant exercised care, control, and management over the cocaine and that she knew
the substance in her possession was cocaine. King v. State, 895 S.W.2d 701, 703 (Tex. Crim.
App. 1995). Possession of cocaine need not be exclusive and evidence which shows the accused
jointly possessed the cocaine with others is sufficient. Whitworth v. State, 808 S.W.2d 566, 569
(Tex. App.--Austin 1991, pet. ref'd). 

 When cocaine is not found on the body of the accused and when the accused is not
in exclusive possession of the place where the cocaine is found, there must be additional
independent facts and circumstances that affirmatively link the accused to the cocaine in such a
manner that it can be concluded the accused had control over it. See Brown v. State, 911 S.W.2d
744, 747-48 (Tex. Crim. App. 1995); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.--Austin 1991, pet. ref'd); Trejo v. State, 766 S.W.2d 381, 384-85 (Tex. App.--Austin
1989, no pet.). An affirmative link generates a reasonable inference that the accused knew of the
cocaine's existence and exercised control over it. See Whitworth, 808 S.W.2d at 570. The
independent facts and circumstances must show that the accused's connection with the cocaine was
more than fortuitous. Brown, 911 S.W.2d at 746-47; Martinets v. State, 884 S.W.2d 185, 187
(Tex. App.--Austin 1994, no pet.). The mere presence of the accused in the vicinity of where
cocaine is found is insufficient to establish possession of cocaine. McGoldrick v. State, 682
S.W.2d 573, 578-79 (Tex. Crim. App. 1985); Oaks v. State, 642 S.W.2d 174, 177 (Tex. Crim.
App. 1982); Randle v. State, 828 S.W.2d 315, 317 (Tex. App.--Austin 1992, no pet.). 

 Courts have articulated various factors to help determine what constitutes an
affirmative link so that the accused's connection to the cocaine meets the elements of intentional
and knowing possession. See Whitworth, 808 S.W.2d at 569 (summarizing and listing thirteen
factors identified in various opinions from court of criminal appeals tending to establish elements
of possession); Trejo, 766 S.W.2d at 384-85. "The number of factors present is less important
than the logical force of those factors, alone or in combination, in establishing the elements of the
offense." Martinets, 884 S.W.2d at 188 (citing Whitworth, 808 S.W.2d at 569 & Trejo, 766
S.W.2d at 385). 

 In accordance with the factors we set out in Whitworth, the evidence in the record
reflects, among other facts, that (1) the cocaine was conveniently accessible to the accused; (2) the
rock cocaine was in plain view; and (3) the conduct of the accused indicated a consciousness of
guilt. 

 Appellant was the only person in the guest room whom the officers observed to be
in close proximity to the cocaine. She was the only person to run into the bathroom when the
officers arrived; Moore answered the door while Jesfer and another man remained on the bed. 
The evidence shows that, although appellant ran into the bathroom, she did not use the toilet, take
a shower, or wash her hands. Even though the officer found the shower area and sink were wet
from being used shortly before they arrived, they discovered the crack cocaine sitting in the
shower soap dish and found it to be dry, indicating that it had been placed there even more
recently. The cocaine, sitting in the shower soap dish, was in plain view. Finally, appellant's
conduct of running into the bathroom when Moore opened the guest room door to the officers and
then emerging within a few minutes without using the toilet, washing her hands or taking a
shower, indicates a consciousness of guilt. 

 As the State contends, these links when considered together would allow the fact
finder to infer that appellant was holding the rock cocaine when the officers arrived at the guest
room door and that she ran into the bathroom in an attempt to hide the cocaine in the shower soap
dish. We hold that the evidence was legally and factually sufficient to demonstrate an affirmative
link between appellant and the cocaine. 


Conclusion


 When considered in the light most favorable to the verdict, the evidence would
allow a rational trier of fact to find that appellant exercised care, custody and control of the
cocaine beyond a reasonable doubt. Additionally, the court's determination that appellant
possessed the cocaine was not so against the great weight and preponderance of the evidence as
to be manifestly unjust. The evidence is legally and factually sufficient to establish that appellant
possessed the cocaine. Appellant's two issues are overruled and the court's judgment adjudicating
appellant delinquent is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: August 12, 1999

Do Not Publish
1. At trial, appellant stipulated to the drug analysis that determined the rocks were crack
cocaine and stated that she had no objection to the admission of the drug analysis. 



 facts and circumstances that affirmatively link the accused to the cocaine in such a
manner that it can be concluded the accused had control over it. See Brown v. State, 911 S.W.2d
744, 747-48 (Tex. Crim. App. 1995); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.--Austin 1991, pet. ref'd); Trejo v. State, 766 S.W.2d 381, 384-85 (Tex. App.--Austin
1989, no pet.). An affirmative link generates a reasonable inference that the accused knew of the
cocaine's existence and exercised control over it. See Whitworth, 808 S.W.2d at 570. The
independent facts and circumstances must show that the accused's connection with the cocaine was
more than fortuitous. Brown, 911 S.W.2d at 746-47; Martinets v. State, 884 S.W.2d 185, 187
(Tex. App.--Austin 1994, no pet.). The mere presence of the accused in the vicinity of where
cocaine is found is insufficient to establish possession of cocaine. McGoldrick v. State, 682
S.W.2d 573, 578-79 (Tex. Crim. App. 1985); Oaks v. State, 642 S.W.2d 174, 177 (Tex. Crim.
App. 1982); Randle v. State, 828 S.W.2d 315, 317 (Tex. App.--Austin 1992, no pet.). 

 Courts have articulated various factors to help determine what constitutes an
affirmative link so that the accused's connection to the cocaine meets the elements of intentional
and knowing possession. See Whitworth, 808 S.W.2d at 569 (summarizing and listing thirteen
factors identified in various opinions from court of criminal appeals ten