NO. 07-04-0522-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



AUGUST 8, 2005



______________________________




SALVADOR ELISEO PENA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 48,859-A; HONORABLE HAL MINER, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Pursuant to a plea of not guilty, appellant Salvador Eliseo Pena was convicted by
a jury of possession of a controlled substance, enhanced, and punishment was assessed
at 60 years confinement and a $5,000 fine. Presenting three issues, appellant asserts (1)
the evidence is legally and (2) factually insufficient to support a finding of guilt, and (3) he
was denied effective assistance of counsel. We reverse and render.

 Officer Alonzo, a 25-year veteran of law enforcement, testified that on February 9,
2004, at approximately 9:30 p.m., he was on patrol in Potter County and while on Loop 335,
he clocked a vehicle speeding and initiated a traffic stop. A female without identification
was driving the vehicle and appellant was the passenger. As is customary when someone
has no identification, Alonzo asked the female, who identified herself as Stacy Nugent, to
exit the vehicle and walk behind it to separately question appellant about her identification. 
As Stacy walked away from the vehicle, Alonzo noticed some crinkled aluminum foil
containing a plastic bag with a powdery substance in plain view on the console. When
questioned about the substance, appellant responded it was for making cookies and
handed it to Alonzo. Alonzo had appellant exit the vehicle and conducted a pat-down
search. He discovered a substance in appellant's coat pocket which appellant claimed he
had obtained from his mother to make tortillas. (1) 

 The suspects were handcuffed and placed in the patrol car. After backup arrived,
Alonzo conducted a search of the vehicle. The only other suspicious item found was a
small package containing white powder. Stacy and appellant were driven to the
department and arrested. The substances were tested the following morning; the contents
of the plastic bag wrapped in foil tested positive for 60.77 grams of methamphetamine and
the other substances tested negative for controlled substances. Although appellant had
told Alonzo the substances were baking soda and masa, that was not confirmed.

 By his first issue, appellant contends the evidence is legally insufficient to support
a finding of guilt. We agree. In conducting a legal sufficiency review, we examine the
verdict, after viewing the evidence in the light most favorable to the prosecution, to
determine whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
2789, 61 L.Ed.2d 560, 573 (1979); Burden v. State, 55 S.W.3d 608, 612-13 (Tex.Cr.App.
2001). This standard is the same in both direct and circumstantial evidence cases. Burden,
55 S.W.3d at 612-13. In measuring the legal sufficiency of the evidence to sustain a
conviction, we measure the elements of the offense as defined by a hypothetically correct
jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997). This is done by
considering all the evidence that was before the jury--whether proper or improper--so that
we can make an assessment from the jury's perspective. Miles v. State, 918 S.W.2d 511,
512 (Tex.Cr.App. 1996). As an appellate court, we may not sit as a thirteenth juror, but
must uphold the jury's verdict unless it is irrational or unsupported by more than a "mere
modicum" of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988). 

 Before determining whether the evidence is sufficient to support appellant's
conviction, we must review the essential elements the State was required to prove. 
Appellant was charged with possession of methamphetamine of four grams or more but
less than 200 grams, a second degree felony. Tex. Health & Safety Code Ann. §
481.115(d) (Vernon 2003). To prove unlawful possession of a controlled substance, the
State was required to prove by direct or circumstantial evidence that the accused (1)
exercised actual care, custody, control, or management over the substance and (2) knew
the matter he possessed was contraband. Tex. Pen. Code Ann. § 1.07(a)(39) (Vernon
2003). See also Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Cr.App. 2005), citing
Joseph v. State, 897 S.W.2d 374, 376 (Tex.Cr.App. 1995). The evidence must establish
the accused's connection with the controlled substance was more than just fortuitous. 
Brown v. State, 911 S.W.2d 744, 747 (Tex.Cr.App. 1995). 

 When the accused is not in exclusive possession of the place where contraband is
found or the contraband is not on the accused's person, additional independent facts and
circumstances must affirmatively link him to the contraband. Deshong v. State, 625 S.W.2d
327, 329 (Tex.Cr.App. 1981). Affirmative links is a shorthand expression of what must be
proven to establish that the accused possessed some kind of contraband knowingly or
intentionally and is used to evaluate the sufficiency of the evidence. Brown, 911 S.W.2d
at 747. The affirmative links rule is a common sense notion designed to protect innocent
bystanders-a parent, child, spouse, roommate, or friend--from conviction based solely
upon his fortuitous proximity to someone else's contraband. Poindexter, 153 S.W.3d at
406. 

 Affirmative links may include, but are not limited to: (1) appellant's presence when
the contraband was found; (2) whether the contraband was in plain view; (3) appellant's
proximity to and the accessibility of the contraband; (4) whether appellant was under the
influence of narcotics when arrested; (5) whether appellant possessed other contraband
when arrested; (6) whether appellant made incriminating statements when arrested; (7)
whether appellant attempted to flee; (8) whether appellant made furtive gestures; (9)
whether there was an odor of the contraband; (10) whether other contraband or drug
paraphernalia was present; (11) whether appellant owned or had the right to possess the
place where the drugs were found; (12) whether the place the drugs were found was
enclosed; (13) the amount of contraband found; (14) whether appellant was the driver of the
automobile in which the contraband was found; and (15) whether appellant possessed a
large amount of cash. See Taylor v. State. 106 S.W.3d 827, 832 (Tex.App.-Dallas 2003,
no pet.). See also Trejo v. State, 766 S.W.2d 381, 384 (Tex.App.-Austin 1989, no pet.). It
is the logical force of these factors, individually or combined, which determines whether the
State's evidence links appellant to the contraband. Trejo, 766 S.W.2d at 385.

 It is undisputed that appellant was neither the owner nor driver of the vehicle; he was
merely a passenger. Thus, without appellant being in exclusive possession of the
substance, the State was required to present independent facts linking him to it. As the
State points out, the plastic bag wrapped in foil containing methamphetamine was in plain
view on the console and was in close proximity to appellant. However, during cross-examination, Officer Alonzo, the State's only witness, negated any link between appellant
and the methamphetamine by testifying as follows:


 appellant was not under the influence of a controlled substance;
 appellant confirmed Stacy's identity and did not give a conflicting
statement;
 appellant was cooperative and not nervous when questioned;
 appellant willingly handed him the plastic bag on the console when
asked;
 nothing suspicious was found on the passenger's side of the vehicle
and no other contraband or paraphernalia was found in the vehicle or
on appellant's person;
 appellant did not attempt to hide the contraband;
 there was no attempt to flee nor any furtive gestures;
 appellant complied when asked to exit the vehicle and submit to a pat-down search; and
 the smaller package found during the search of the vehicle and the
contents found in appellant's coat pocket both tested negative.



Alonzo was also asked whether any attempt was made to lift fingerprints from the plastic
bags or foil to which he responded, "usually I don't take fingerprints."

 More compelling evidence supporting appellant's lack of knowledge that the plastic
bag on the console contained methamphetamine came from Alonzo. He testified regarding
a reference appellant made to the substances being fake. When cross-examined about
State's Exhibit 3, which tested negative, Alonzo testified:

 Q. Well, even after he was at the office, he still told you when you asked him
what State's Exhibit Number 3 was, he still told you it was fake stuff. Is that
correct?

 A. He told me it was - all of this was fake stuff. That they were going to sell
it to - and excuse my language to dumb fucks. It's all fake shit.

 Q. And --

 A. But he had pointed at all of this [referring to the three State Exhibits] stuff.


 On redirect examination, the State attempted to show that appellant intended to
"step on" the methamphetamine, which means mixing in other substances such as sugar,
salt flour, and aspirin to increase profits. Once again, however, Alonzo explained that
appellant was referring to all the items and powder as "fake stuff." On recross examination,
Alonzo clarified that appellant did not distinguish between fake stuff and methamphetamine,
but referred to all the substances being fake. 

 After the State rested, the defense called Stacy to the stand. She chose to remain
silent. The only item introduced by the defense and admitted into evidence was a copy of
a judgment of conviction for Stacy Nugent for possession of a controlled substance that
occurred on February 9, 2004. 

 Although the State theorized that appellant's possession of "fake stuff" was for
diluting controlled substances for increased profits, the evidence demonstrates appellant
believed all the substances in the vehicle and in his coat pocket were "fake stuff" he
intended to sell to "dumb fucks." The State asserts in its brief that "appellant lied about the
purpose of the substance (it was for making cookies)," and "appellant admitted exercising
control over the substance when he stated he intended to sell it to 'dumb fucks;'" however,
the State does not reference any authority criminalizing lying or possessing "fake stuff." (2)

 Alonzo's testimony negates any knowledge by appellant that the plastic bag found
on the console contained methamphetamine. Further, the State failed to prove appellant
exercised care, custody, control, or management over the methamphetamine or that his
connection to it was more than just fortuitous. Appellant's status as a passenger in the
vehicle driven by Stacy, coupled with his insistence that all the substances were "fake stuff"
is not sufficient evidence to suggest he had knowledge that the powder in the plastic bag
was methamphetamine. See generally Roberson v. State, 80 S.W.3d 730, 742
(Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (reversing and rendering a judgment of
acquittal because the evidence was legally insufficient to provide the required affirmative
link between appellant and the cocaine). Viewing the evidence under Jackson, we find it
does not create the logical force necessary to allow a rational jury to conclude beyond a
reasonable doubt that appellant had knowledge of the methamphetamine. Issue one is
sustained. Our disposition of this issue pretermits consideration of issues two and three. 

 Accordingly, the judgment of the trial court is reversed and a judgment of acquittal
is hereby rendered. 

 Don H. Reavis

 Justice


Do not publish.
1. Officer Alonzo testified he was unable to test the substances at the scene because
the last methamphetamine test kit had been recently used. 
2. We are cognizant that it is an offense to intend to deliver or deliver a simulated
controlled substance. See Tex. Health & Safety Code Ann. § 482.002(a) (Vernon 2003). 
See generally Rodriguez v. State, 879 S.W.2d 283 (Tex.App.-Houston [14th Dist.] 1994,
pet. ref'd) (reversing a conviction for delivery of a controlled substance because the
defendant should have been charged with delivery of a simulated controlled substance for
selling flour he expressly represented as cocaine). Appellant was not charged with intent
to deliver, only possession.



 whether it resulted in harm is
immaterial. Jordan v. State, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008); Cain v. State,
947 S.W.2d at 264. Similarly, the Texas Court of Criminal Appeals held, prior to Cain, that
harm is presumed in situations like that before us. White v. State, 823 S.W.2d at 300. To
date, the high court has yet to overrule White. But see Cornish v. State, No. 04-95-0631-CR, 1996 Tex. App. Lexis 1836 at *7-9 (Tex. App.–San Antonio May 8,1996, no pet.) (not
designated for publication) (applying a harm analysis in a similar situation). So, because
White has not been overruled, we too presume that appellant was harmed by the trial
court’s decision to withhold from him a transcript of the prior trial. Indeed, it seems rather
unreasonable to hold otherwise. This is so because the test used in assessing whether
the trial court erred already has within it an element of harm. The particular element
relates to the requirement that the defendant show a need for the transcript. If such a
need exists, then logic suggests that denying access to it or its reasonable equivalent is
harmful. So, since need was and is presumed here given that the State failed to establish
otherwise at trial, some measure of harm must also be presumed.  
          Alternatively, if Cain does require a harm analysis, despite the holding of White, we
again conclude that reversal is justified. As previously mentioned, the need for the
information was presumed. Indeed, the State acknowledged in its appellate brief that there
were inconsistencies in the testimony of those who had testified before mistrial was
granted. Thus, a transcript of that prior testimony arguably could have been used to
highlight the inconsistencies or affect the credibility of the witnesses who testified at the
later trial. Moreover, we find disingenuous the State’s argument that because the six
witnesses involved did not see the actual assault for which appellant was convicted, the
information they imparted was of minimal worth. If their testimony was so unimportant, one
is left to wonder why the State proffered it in the first place. The record provides that
answer for the testimony included not only a description of the circumstances before and
after the assaults for which appellant was convicted but also multiple assaults he
committed with the golf club (including that upon victim Cox). It also described appellant
entering his house after the golf club was taken from him, returning with large knives in
hand, “running at anybody he saw” with those knives, and eventually cutting an individual
named Mickey. That is hardly irrelevant evidence. 
          We also note that the number of witnesses involved was not one or two, but rather
six. Those six were slightly less than half of the fourteen the State ultimately called during
the guilt/innocence phase of the trial. This too indicates that the testimony withheld from
appellant was more than incidental. 
          That the quantum of evidence warranting conviction was not small is also an indicia
to consider. Yet, it alone is not determinative. Scott v. State, 227 S.W.3d 670, 690 (Tex.
Crim. App. 2007). Nor should it be. Constitutional rights exist to protect not simply the
innocent. Those guilty are entitled to partake of them as well. Indeed, it may be those
eventually found guilty who are to benefit the most from them since their observance goes
far in assuring a lawful verdict. So, while it may well be that a plethora of evidence
indicative of guilt appears of record, we nonetheless must take caution to avoid placing
more importance on the ends to be gained by conviction than the means by which
conviction is secured. This is especially so here since the violation could have been easily
avoided.
          Whether the error affected the integrity of the process is what we have to ask and
answer. Scott v. State, 227 S.W.3d at 690. It is difficult for us to conclude here that it did
not. Consequently, we reverse the judgments and remand the cause to the trial court.
 
                                                                           Brian Quinn 
                                                                          Chief Justice
 
Publish.