NO. 07-04-0522-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 8, 2005

_____


SALVADOR ELISEO PENA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 48,859-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Pursuant to a plea of not guilty, appellant Salvador Eliseo Pena was convicted by

a jury of possession of a controlled substance, enhanced, and punishment was assessed

at 60 years confinement and a $5,000 fine.  Presenting three issues, appellant asserts (1)

the evidence is legally and (2) factually insufficient to support a finding of guilt, and (3) he was denied effective assistance of counsel. We reverse and render.

Officer Alonzo, a 25-year veteran of law enforcement, testified that on February 9, 2004, at approximately 9:30 p.m., he was on patrol in Potter County and while on Loop 335, he clocked a vehicle speeding and initiated a traffic stop. A female without identification was driving the vehicle and appellant was the passenger. As is customary when someone has no identification, Alonzo asked the female, who identified herself as Stacy Nugent, to exit the vehicle and walk behind it to separately question appellant about her identification. As Stacy walked away from the vehicle, Alonzo noticed some crinkled aluminum foil containing a plastic bag with a powdery substance in plain view on the console. When questioned about the substance, appellant responded it was for making cookies and handed it to Alonzo. Alonzo had appellant exit the vehicle and conducted a pat-down search. He discovered a substance in appellant's coat pocket which appellant claimed he had obtained from his mother to make tortillas.[1]

The suspects were handcuffed and placed in the patrol car. After backup arrived, Alonzo conducted a search of the vehicle. The only other suspicious item found was a small package containing white powder. Stacy and appellant were driven to the department and arrested. The substances were tested the following morning; the contents

_____

[1]Officer Alonzo testified he was unable to test the substances at the scene because the last methamphetamine test kit had been recently used.

of the plastic bag wrapped in foil tested positive for 60.77 grams of methamphetamine and the other substances tested negative for controlled substances. Although appellant had told Alonzo the substances were baking soda and masa, that was not confirmed.

By his first issue, appellant contends the evidence is legally insufficient to support a finding of guilt. We agree. In conducting a legal sufficiency review, we examine the verdict, after viewing the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Burden v. State, 55 S.W.3d 608, 612-13 (Tex.Cr.App. 2001). This standard is the same in both direct and circumstantial evidence cases. *Burden*, 55 S.W.3d at 612-13. In measuring the legal sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997). This is done by considering all the evidence that was before the jury—whether proper or improper—so that we can make an assessment from the jury's perspective. Miles v. State, 918 S.W.2d 511, 512 (Tex.Cr.App. 1996). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a "mere modicum" of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

Before determining whether the evidence is sufficient to support appellant's conviction, we must review the essential elements the State was required to prove.

Appellant was charged with possession of methamphetamine of four grams or more but less than 200 grams, a second degree felony. Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2003). To prove unlawful possession of a controlled substance, the State was required to prove by direct or circumstantial evidence that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew the matter he possessed was contraband. Tex. Pen. Code Ann. § 1.07(a)(39) (Vernon 2003). *See also* Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Cr.App. 2005), citing Joseph v. State, 897 S.W.2d 374, 376 (Tex.Cr.App. 1995). The evidence must establish the accused's connection with the controlled substance was more than just fortuitous. Brown v. State, 911 S.W.2d 744, 747 (Tex.Cr.App. 1995).

When the accused is not in exclusive possession of the place where contraband is found or the contraband is not on the accused's person, additional independent facts and circumstances must affirmatively link him to the contraband. Deshong v. State, 625 S.W.2d 327, 329 (Tex.Cr.App. 1981). Affirmative links is a shorthand expression of what must be proven to establish that the accused possessed some kind of contraband knowingly or intentionally and is used to evaluate the sufficiency of the evidence. *Brown*, 911 S.W.2d at 747. The affirmative links rule is a common sense notion designed to protect innocent bystanders–a parent, child, spouse, roommate, or friend--from conviction based solely upon his fortuitous proximity to someone else's contraband. *Poindexter*, 153 S.W.3d at 406.

4

Affirmative links may include, but are not limited to: (1) appellant's presence when the contraband was found; (2) whether the contraband was in plain view; (3) appellant's proximity to and the accessibility of the contraband; (4) whether appellant was under the influence of narcotics when arrested; (5) whether appellant possessed other contraband when arrested; (6) whether appellant made incriminating statements when arrested; (7) whether appellant attempted to flee; (8) whether appellant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether appellant owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) the amount of contraband found; (14) whether appellant was the driver of the automobile in which the contraband was found; and (15) whether appellant possessed a large amount of cash. *See* Taylor v. State. 106 S.W.3d 827, 832 (Tex.App.–Dallas 2003, no pet.). *See also* Trejo v. State, 766 S.W.2d 381, 384 (Tex.App.-Austin 1989, no pet.). It is the logical force of these factors, individually or combined, which determines whether the State's evidence links appellant to the contraband. *Trejo,* 766 S.W.2d at 385.

It is undisputed that appellant was neither the owner nor driver of the vehicle; he was merely a passenger. Thus, without appellant being in exclusive possession of the substance, the State was required to present independent facts linking him to it. As the State points out, the plastic bag wrapped in foil containing methamphetamine was in plain view on the console and was in close proximity to appellant. However, during cross-

5

examination, Officer Alonzo, the State's only witness, negated any link between appellant and the methamphetamine by testifying as follows:

- appellant was not under the influence of a controlled substance;
- appellant confirmed Stacy's identity and did not give a conflicting statement;
- appellant was cooperative and not nervous when questioned;
- appellant willingly handed him the plastic bag on the console when asked;
- nothing suspicious was found on the passenger's side of the vehicle and no other contraband or paraphernalia was found in the vehicle or on appellant's person;
- appellant did not attempt to hide the contraband;
- there was no attempt to flee nor any furtive gestures;
- appellant complied when asked to exit the vehicle and submit to a pat-down search; and
- the smaller package found during the search of the vehicle and the contents found in appellant's coat pocket both tested negative.

Alonzo was also asked whether any attempt was made to lift fingerprints from the plastic bags or foil to which he responded, "usually I don't take fingerprints."

More compelling evidence supporting appellant's lack of knowledge that the plastic bag on the console contained methamphetamine came from Alonzo. He testified regarding a reference appellant made to the substances being fake. When cross-examined about State's Exhibit 3, which tested negative, Alonzo testified:

6

Q. Well, even after he was at the office, he still told you when you asked him what State's Exhibit Number 3 was, he still told you it was fake stuff. Is that correct?

A. He told me it was – all of this was fake stuff. That they were going to sell it to – and excuse my language to dumb fucks. It's all fake shit.

Q. And --

A. But he had pointed at all of this [referring to the three State Exhibits] stuff.

On redirect examination, the State attempted to show that appellant intended to "step on" the methamphetamine, which means mixing in other substances such as sugar, salt flour, and aspirin to increase profits. Once again, however, Alonzo explained that appellant was referring to all the items and powder as "fake stuff." On recross examination, Alonzo clarified that appellant did not distinguish between fake stuff and methamphetamine, but referred to all the substances being fake.

After the State rested, the defense called Stacy to the stand. She chose to remain silent. The only item introduced by the defense and admitted into evidence was a copy of a judgment of conviction for Stacy Nugent for possession of a controlled substance that occurred on February 9, 2004.

Although the State theorized that appellant's possession of "fake stuff" was for diluting controlled substances for increased profits, the evidence demonstrates appellant believed all the substances in the vehicle and in his coat pocket were "fake stuff" he intended to sell to "dumb fucks." The State asserts in its brief that "appellant lied about the purpose of the substance (it was for making cookies)," and "appellant admitted exercising

7

control over the substance when he stated he intended to sell it to 'dumb fucks;'" however, the State does not reference any authority criminalizing lying or possessing "fake stuff."[2]

Alonzo's testimony negates any knowledge by appellant that the plastic bag found on the console contained methamphetamine. Further, the State failed to prove appellant exercised care, custody, control, or management over the methamphetamine or that his connection to it was more than just fortuitous. Appellant's status as a passenger in the vehicle driven by Stacy, coupled with his insistence that all the substances were "fake stuff" is not sufficient evidence to suggest he had knowledge that the powder in the plastic bag was methamphetamine. *See generally* Roberson v. State, 80 S.W.3d 730, 742 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) (reversing and rendering a judgment of acquittal because the evidence was legally insufficient to provide the required affirmative link between appellant and the cocaine). Viewing the evidence under *Jackson*, we find it does not create the logical force necessary to allow a rational jury to conclude beyond a reasonable doubt that appellant had knowledge of the methamphetamine. Issue one is sustained. Our disposition of this issue pretermits consideration of issues two and three.

---

[2]We are cognizant that it is an offense to intend to deliver or deliver a simulated controlled substance. *See* Tex. Health & Safety Code Ann. § 482.002(a) (Vernon 2003). *See generally* Rodriguez v. State, 879 S.W.2d 283 (Tex.App.–Houston [14th Dist.] 1994, pet. ref'd) (reversing a conviction for delivery of a controlled substance because the defendant should have been charged with delivery of a simulated controlled substance for selling flour he expressly represented as cocaine). Appellant was not charged with intent to deliver, only possession.

Accordingly, the judgment of the trial court is reversed and a judgment of acquittal is hereby rendered.

Don H. Reavis
Justice

Do not publish.