NO. 07-06-0259-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JULY 26, 2006


______________________________



FRANKIE ALVAREZ, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 64TH DISTRICT COURT OF SWISHER COUNTY;



NO. A-3944-0504; HON. ROBERT W. KINKAID, JR., PRESIDING


_______________________________



Order of Dismissal


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Appellant, Frankie Alvarez, appeals his conviction for deadly conduct. We dismiss
the proceeding for lack of jurisdiction. 

 The record before us discloses that sentence was imposed upon appellant in open
court on March 20, 2006. Thus, he had until April 19, 2006, to either file a notice of appeal
or a motion for new trial and thereby extend the deadline to file a notice of appeal. See
Tex. R. App. P. 26.2(a) (discussing the deadlines by which one must perfect an appeal).
The record discloses that his motion for new trial was filed on April 20, 2006, and notice
of appeal on June 20, 2006. Given this, appellant's effort to perfect an appeal was
untimely. Moreover, this circumstance was made known to appellant by letter from this
court dated July 13, 2006. In that letter, appellant and his counsel were also given
opportunity to respond. No response has been received to date. 

 A timely filed notice of appeal is essential to invoke our appellate jurisdiction. Olivo
v. State, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). If it is untimely, then we can take
no action other than to dismiss the proceeding. Id. at 523. Appellant's notice being
untimely filed, we have no jurisdiction over the matter and dismiss the appeal. (1) 


 Brian Quinn

 Chief Justice

 

Do not publish. 

 











1. Permission to perfect an untimely appeal may be sought through art. 11.07 of the Texas Code of
Criminal Procedure.


estified that he then recovered the bag
from atop of the metal pipes forming the drainage culvert and found the bag to be
remarkably free of debris given its location.

 The bag, which had no identification, consisted of two separate zippered
compartments-a small upper compartment and a larger lower compartment. Trooper Davis
opened the lower compartment which revealed a secondary one gallon plastic bag
containing a green leafy substance which, given his experience, looked like marihuana. 
When Davis lifted the plastic bag from the cooler, he noticed pink/purple ballpoint ink on the
front of it providing a model and serial number for a twenty-inch Sansui LCD television with
a date of "9-23-04." Trooper Davis believed this information to be significant because he
had just moments earlier admired a twenty-inch Sansui LCD television in Appellant's RV. 
 Davis had stepped inside the RV, with the Appellant's permission, to retrieve the tow bar
which he believed was relevant to his investigation concerning the cause of the crash, and
had even commented to Appellant that he and his wife had been shopping for such a TV. 
According to Davis, due to the proximity of the cooler bag and the handwritten information
regarding the TV, he changed the nature of his investigation from a crash to a criminal
investigation. 

 Davis then arrested Appellant and called for a K-9 unit to come to the scene. The
K-9 dog alerted on the driver's side door and traced the odor to a small box on the side of
the RV. No narcotics were found in the RV; however, an inventory search did reveal drug
paraphernalia in the form of a marihuana pipe, a marihuana cigarette, four butane torch
lighters, a motorcycle lighter, a pair of forceps with burnt tips, a long bladed knife with a
burnt tip, tweezers with burnt tips, a black rubber bulb, a hollow plastic tube, and butane
fuel. A search of Appellant incident to his arrest turned up $3,051 in cash, a cell phone, and
Zigzag cigarette rolling papers. 

 All the evidence, including the red cooler bag, was submitted to the county crime lab
for processing. The small upper compartment of the red cooler bag was not opened until
that time. The deputy technician discovered a white crystalline substance weighing
approximately 2.08 grams. (1) He also found a leather case containing scales, syringes, small
baggies, and a metal spoon. Fingerprint analysis of the evidence proved inconclusive. 

 The green leafy substance and the white crystalline substance found in the red cooler
bag were submitted to the Texas Department of Public Safety lab for analysis. The
Department's chemist testified that the green leafy substance was marihuana which
weighed 13.91 ounces and that the crystalline substance was methamphetamine containing
adulterants and dilutants weighing 2.09 grams. Appellant was indicted for possession of
methamphetamine in an amount of one gram or more but less than four.

Sufficiency of the Evidence


 By his first issue, Appellant contends the evidence was factually insufficient to
support his conviction. We disagree. When conducting a factual sufficiency review, we
examine all the evidence in a neutral light and determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484
(Tex.Crim.App. 2004), overruled in part by Watson v. State, 204 S.W.3d 404, 415-17
(Tex.Crim.App. 2006). We cannot reverse a conviction unless we find some objective basis
in the record that demonstrates that the great weight and preponderance of the evidence
contradicts the jury's verdict. Watson, 204 S.W.3d at 417. In other words, we cannot
conclude that Appellant's conviction is "clearly wrong" or "manifestly unjust" simply because
we might disagree with the jury's verdict. Id.; Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).

 The State was required to prove that Appellant exercised actual care, custody,
control, or management, of the methamphetamine and that he knew the substance was
methamphetamine. See Tex. Health & Safety Code Ann. §§ 481.002(38) & 481.115(c)
(Vernon 2003 & Supp. 2006). By either direct or circumstantial evidence, the State must
establish, to the requisite level of confidence, that the accused's connection with the
controlled substance was more than just fortuitous. Poindexter v. State, 153 S.W.3d 402,
406 (Tex.Crim.App. 2005). Presence or proximity, when combined with other evidence,
either direct or circumstantial (e.g., "links"), may be sufficient to establish possession. 
Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). (2) 

 Links include, but are not limited to: (1) Appellant's presence when the contraband
was found; (2) whether the contraband was in plain view; (3) Appellant's proximity to and the
accessibility of the contraband; (4) whether Appellant was under the influence of narcotics
when arrested; (5) whether Appellant possessed other contraband when arrested; (6)
whether Appellant made incriminating statements when arrested; (7) whether Appellant
attempted to flee; (8) whether Appellant made furtive gestures; (9) whether there was an
odor of the contraband; (10) whether other contraband or drug paraphernalia was present;
(11) whether Appellant owned or had the right to possess the place where the drugs were
found; (12) whether the place the drugs were found was enclosed; (13) the amount of
contraband found; (14) whether Appellant was the driver of the automobile in which the
contraband was found; and (15) whether Appellant possessed a large amount of cash. See
Taylor v. State, 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.); Trejo v. State, 766
S.W.2d 381, 384 (Tex.App.-Austin 1989, no pet.). It is the logical force of the circumstantial
evidence, not the number of links, that must support a jury's verdict. Evans, 202 S.W.3d
at 166. 

 The initial investigatory check had shown that the RV was registered to someone
other than Appellant, however, it was later determined that Appellant had purchased the
vehicle a month earlier. The evidence established that he was not intoxicated nor did he
have any controlled substances on his person at the time of his arrest. However, the RV
was in close proximity to the median where the red cooler was found. Additionally, the
cooler, although resting on a drainage culvert where trash collects against the grate, was
free from debris. 

 According to the evidence, Appellant did not make any incriminating statements; in
fact, he denied ownership of the cooler when questioned by Trooper Davis. Howard, the
former police officer turned tow truck driver, and Davis both testified that Appellant was
nervous at first contact. Trooper Davis added that Appellant's nervousness was excessive
given the circumstances of the incident. He further testified that Appellant remained
nervous with periods of aggression. 

 Trooper Davis also testified that it was highly unlikely that the Sansui television in
Appellant's RV and the information corresponding to that TV written on the plastic bag
containing marihuana was random. On cross-examination, he testified that he had
researched television brands while shopping for an LCD television and discovered that
Sansui imported only 147,000 units compared to Samsung's 50 million units. 

 Although the K-9 unit alerted on the RV, no narcotics were found inside. The deputy,
however, testified that sometimes it is possible for a dog to alert to an odor even after the
narcotics that caused the odor are removed.

 According to Trooper Davis, the scales, metal spoon, syringes, plastic baggies, and
other paraphernalia were all indicative of narcotics use. Regarding traveling with large
amounts of cash, he testified during cross-examination that it is not necessarily indicative
of narcotics; however, upon redirect examination, he explained that large amounts of cash
did pose a security risk and that traveling with that kind of cash was at least consistent with
buying and selling narcotics. Given the logical force of the totality of this evidence, albeit
circumstantial, we cannot conclude that Appellant's conviction is "clearly wrong" or
"manifestly unjust." Issue one is overruled. 

Extraneous Offenses


 By his second issue, Appellant maintains the trial court erred in allowing evidence
of extraneous offenses which were part of the context of his arrest in that they were not
relevant to the charged offense. Although not stated in his issue, Appellant argues that the
extraneous evidence he complains of was introduced during the State's case-in-chief
without the State providing reasonable notice as required by Rule 404(b) of the Texas Rules
of Evidence. The State argues that Appellant waived this issue. 

 Upon Appellant's request, the State provided notice of its intent to introduce the
following extraneous offense:

 [o]n or about September 5, 2005, in Tarrant County, Texas, the defendant
intentionally, knowingly, or recklessly carried on or about his person a
handgun, illegal knife, or club.


 As Appellant points out, the State did not introduce that offense at trial; instead, the
State offered, and the trial court admitted the various items of drug paraphernalia located
during the inventory search. Appellant further argues that this extraneous evidence was not
admissible as same transaction contextual evidence. See Wyatt v. State, 23 S.W.3d 18,
25 (Tex.Crim.App. 2000). 

 At every instance that extraneous evidence was offered, defense counsel lodged
objections based on Rules 401 and 403 of the Texas Rules of Evidence, which the trial
court consistently overruled. At no time, however, did defense counsel urge an objection
on the State's failure to provide notice under Rule 404(b). We agree with the State that a
trial objection regarding extraneous offenses that does not comport with the complaint
raised on appeal does not preserve the contention for appellate review. See Medina v.
State, 7 S.W.3d 633, 643 (Tex. 1999); Knox v. State, 934 S.W.2d 678, 687 (Tex.Crim.App.
1996).

 Appellant did, however, preserve his complaint under Rule 403 of the Texas Rules
of Evidence which provides, "[a]lthough relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice . . . ." We review the trial
court's ruling on a Rule 403 objection for abuse of discretion. See State v. Melcher, 153
S.W.3d 435, 439 (Tex. 2005). The trial court does not abuse its discretion unless its ruling
lies outside the zone of reasonable disagreement. See Montgomery v. State, 810 S.W.2d
372, 391 (Tex.Crim.App. 1991) (op. on reh'g).

 Rule 403 does not exclude all prejudicial evidence, only that which is "unfairly"
prejudicial. Melcher, 153 S.W.3d at 440. Evidence is unfairly prejudicial under Rule 403
when it has a "tendency to tempt the jury into finding guilt on grounds apart from proof of
the offense charged." Id. 

 In determining a Rule 403 objection, the trial court balances several factors,
including, but not limited to: (1) the probative value of the evidence; (2) the potential to
impress the jury in some irrational yet indelible way; (3) the time needed to develop the
evidence; and (4) the proponent's need for the evidence. Id. Outside the jury's presence,
the trial court heard testimony from Trooper Davis regarding the extraneous evidence found
in Appellant's RV. Following defense counsel's Rule 403 objection, the trial court ruled:

 after performing the weighing test, I do find that the prejudicial effect does not
outweigh the probative value. I think there's really two reasons to allow the
admission of the evidence. Number one, I think it's part and parcel of the
same criminal conduct, but also with respect to being an identifier, I think it's
very relevant to - to the - and a connection, if the jury chooses to find that,
between the - the contraband and the RV. So I'll overrule the objection. 


 The evidence in question tended to prove an elemental fact of consequence, i.e.,
linking Appellant to possession of methamphetamine. Additionally, based upon the
considerations set forth above, we find that the danger of unfair prejudice did not outweigh
its probative value. We conclude the trial court did not abuse its discretion in admitting the
extraneous evidence for the jury to consider in determining whether Appellant was guilty of
the charged offense. Issue two is overruled.

 Accordingly, the trial court's judgment is affirmed.


 Patrick A. Pirtle

 Justice


 
Do not publish.

1. The Texas Department of Public Safety's chemist testified that the substance
weighed 2.09 grams.
2. The Court of Criminal Appeals has recently recognized that "affirmative" adds
nothing to the plain meaning of "link" and now uses only the word "link" to judge evidence
of possession. Evans v. State, 202 S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).